UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| PATRICK A. DAVIS | CIVIL ACTION NO.: 17-cv-01556 |
| VERSUS | JUDGE ELIZABETH FOOTE |
| MID STATE HOMES, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Now before the Court is a Motion to Dismiss filed by Defendants Mid State Homes ("Mid State") and Green Tree Servicing LLC ("Green Tree"), asking the Court to strike or dismiss the pleading filed by Patrick Davis ("Plaintiff") entitled "Plaintiff's Second Motion to Amend Pleading." [Record Document 26]. Defendants allege that this pleading does not satisfy minimum pleading standards and is not actionable as a matter of law. [Record Document 27]. For the reasons discussed below, Defendants' motion to dismiss is hereby **GRANTED** and Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE**.

## PROCEDURAL HISTORY

Plaintiff, appearing pro se, filed this civil action against Mid State on December 1, 2017. Record Document 1. He then sought and was granted leave to amend his complaint to include Green Tree as a defendant. Record Documents 2–4. Defendants subsequently filed their first motion to dismiss.[1] Record Document 11. Plaintiff also filed a motion for summary judgment.

---

[1] From the filings, the relationship between Mid State and Green Tree is unclear, but the entities are represented by the same counsel and have filed their motions to dismiss together. *See* Record Documents 11 & 27. Additionally, Plaintiff states in his supplemental opposition that Green Tree merged with Mid State and acquired all of Mid State's accounts and properties when Mid State ceased its operations in Louisiana. Record Document 36, p. 3.

Record Document 18. This Court denied both Plaintiff's motion for summary judgment and Defendants' motion to dismiss and granted Plaintiff leave to amend his complaint. Record Document 23. The Court instructed Plaintiff to provide additional information regarding his fraud claim and his claims under the Servicemembers Civil Relief Act ("SCRA"). *Id.* at 4 & 12. Plaintiff then filed a second amended complaint. Record Document 26. Defendants responded by filing a second motion to dismiss. Record Document 27. The motion is opposed. Record Documents 31 & 36.

## FACTUAL BACKGROUND

Plaintiff alleges that he entered into a construction and mortgage agreement with Mid State in September of 2002 whereby Mid State would construct a dwelling on a lot Plaintiff owned in Shreveport ("the property"). Record Document 26, p. 3. A mortgage on the property was recorded. Record Document 1, p. 1. Plaintiff claims that the property "has not been conveyed from ownership by the Plaintiff pursuant to any [s]tate [s]tatute of Louisiana." Record Document 26, p. 3. Plaintiff states that he found employment in Baton Rouge, Louisiana in February of 2006 but did not "relinquish[] his residence in Shreveport, LA." Record Document 36, p. 3. The Court interprets this to mean that Plaintiff has not lived on the property since February of 2006.

Plaintiff states that Mid State[2] conducted a seizure of his property in February 2006. *Id.* at 7. This seizure was allegedly done without notice to Plaintiff. *Id.* Plaintiff claims that because he "served on periods of active military duty from May 2005 through November 2006," this seizure violated the SCRA. *Id.* at 12. Mid State allegedly violated the SCRA when it seized his property

---

[2] The Court notes that Plaintiff does not specify whether he is referring to Mid State or Green Tree when he references "the Defendant" throughout his complaint. In his first amended complaint, Plaintiff states he discovered that Green Tree conveyed his property to an unknown party in May of 2013. Record Document 4, p. 1. Accordingly, the Court will construe references to "the Defendant" as references to Mid State for all events that took place before 2013.

2

in February 2006 without notice and before the expiration of the time period provided by the SCRA to withhold a foreclosure, repossession, seizure, or sale of the property of a servicemember who is ordered to active military duty. *Id.* at 12.

Plaintiff alleges that he was issued an IRS Form 1099-C for Cancellation of Debt related to the property for the 2007 tax year, and that this document is recorded. Record Documents 26, p. 3; 4, p. 2. According to Plaintiff, this document cancelled a large portion of Plaintiff's debt owed on the mortgage "without explanation." Record Document 26, p. 3. Plaintiff claims that this document caused him to continue to believe that he owned the property, but also claims that he periodically inspected the web sites for the City of Shreveport and Caddo Parish to see if his property would "become listed as being in jeopardy and of becoming adjudicated...." *Id.* at 3–4 & 9.

After noticing a decrease in the assessment of ad valorem taxes on the property, Plaintiff discovered that an individual named Wallete T. Willis was granted a homestead exemption on the property and appeared to be living there. *Id.* at 4. Plaintiff also discovered that "the Defendant or an agent thereof" previously "attempted to [m]ortgage" the property to two individuals named Christopher B. Thomas and Sheira M. Forster. *Id.* This mortgage was allegedly enacted without notice to Plaintiff and is recorded in the "Caddo Parish Court civil docket." *Id.* Plaintiff has attempted, but has been unable, to contact Wallete T. Willis and inquire as to why he or she is inhabiting his property. *Id.*

On December 1, 2017, after filing his original complaint, Plaintiff discovered that Green Tree conveyed the property to an unknown party in May of 2013. *Id.* at 5. He claims the conveyance is recorded and is entitled, "Quitclaim Deed, Vendor's Lien and Special Mortgage."

3

*Id.* Despite this conveyance, Plaintiff claims that he has not "relinquished his ownership of" the property. *Id.*

Plaintiff makes several other complaints against Defendants, including claims that they refused to accept payments from Plaintiff that were made in an attempt to fulfill his mortgage obligations (*id.* at 9); that the mortgage contract between himself and Mid State contains "conflicting obligations" that should be interpreted in his favor (*id.* at 10); and that Defendants recorded a "false duplicate" mortgage in the Caddo Parish Court, which Plaintiff wishes to have cancelled (*id.* at 15).

In his original and his first amended complaint, Plaintiff suggests several forms of relief, including a refund of all payments made to Mid State, compensation for personal items lost when the property was seized, and compensation for the lot upon which the dwelling was built. *See* Record Document 4, p. 3; 1, p. 2.

In their second motion to dismiss, Defendants argue that Plaintiff still fails to satisfy minimum pleading standards. Record Document 27-1, p. 5. Defendants also claim that Plaintiff does not have private a right of action under the SCRA and that any SCRA claim Plaintiff might have would be time-barred. *Id.* at 6. In response, Plaintiff filed a "Motion to Strike," which was construed by this Court as an opposition to the motion to dismiss. Record Documents 31 & 32. Plaintiff also filed a "Motion for Leave to Submit Notice of Constitutional Question," which this Court construed as a supplemental opposition to the motion to dismiss. Record Documents 34–36. In these filings, Plaintiff complains that Defendants' defenses are "impertinent," "disrespectful and unconstitutional," that the motion to dismiss is written in an "instructional type of language," and that Defendants' argument that the statute of limitations has run in this case is unconstitutional. Record Documents 31, p. 4; 36, p. 5. Plaintiff also claims that the seizure of his residence in 2006

by Mid State constituted a violation of his First, Fourth, Sixth, and Fourteenth Amendment rights and that 28 U.S.C. § 1658, which Defendants cite in support of their argument that the statute of limitations has run on Plaintiff's claims, is unconstitutional. Record Document 36, pp. 6–9.

## LAW AND ANALYSIS

### I. Rule 12(b)(6) Standard

In order to survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6),[3] a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The court must accept as true all of the factual allegations in the complaint in determining whether plaintiff has stated a plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). If a complaint cannot meet this standard, it may be dismissed for failure to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678–79. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). A dismissal under

---

[3] Defendants have not labeled either of their motions to dismiss as motions pursuant to 12(b)(6) for failure to state a claim. *See* Record Documents 11 & 27. However, their arguments that Plaintiff fails to meet minimum pleading standards and that his claims are not actionable as a matter of law fall within the scope of a 12(b)(6) motion to dismiss and the Court will construe the motions as such. *See* Record Document 27-1, p. 1; Federal Rule of Civil Procedure 12(b)(6).

5

12(b)(6) ends the case "at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558.

## II. <u>Plaintiff's SCRA Claims</u>

In the Court's previous ruling, it instructed Plaintiff to amend his complaint and include facts supporting his SCRA claims, including (1) what benefits of the SCRA he was deprived of, and (2) how the acts of Defendants deprived him of those benefits. Record Document 23, p. 12. Plaintiff was warned that the failure to provide such information would result in the dismissal of his claim. *Id.* In his second amended complaint, Plaintiff states that "Defendants acted against the law in seizing the Plaintiff's property in February 2006 without notice of court hearing and before the expiration of the time allowed pursuant to the [SCRA] to withhold foreclosure, repossession, seizure, or sale of property of a Servicemember who is ordered to active military duty." Record Document 26, p. 12. He also lists the following statutes as "grounds for his claim and for relief of the same": 50 U.S.C. §§ 3952, 3953, 4041, and 4042. *Id.* Although Plaintiff's SCRA claims are still somewhat vague, he has supplied the information requested and the Court will not dismiss Plaintiff's second amended complaint on its own motion. However, the Court finds that the statute of limitations has run on any claim Plaintiff may have had under the SCRA and this cause of action therefore is time-barred.

### A. SCRA statute of limitations

In their second motion to dismiss, Defendants argue that the statute of limitations for a private right of action under the SCRA is provided by the federal catchall four-year limitations period found in 28 U.S.C. § 1658(a). Record Document 27-1, pp. 7–8. Defendants allege that the statute of limitations has run on this action because Plaintiff filed this suit on December 1, 2017,

more than eleven years after he claims that his home was first seized.[4] *Id.* at 8. In his supplemental opposition, Plaintiff states that he did not sue Defendants during the four years following the alleged seizure because, although he knew that a foreclosure sale had been scheduled, he was told that it has been cancelled. Record Document 36, p. 4. Plaintiff also claims, confusingly, that applying the four-year catchall statute of limitations to his case would be unconstitutional because Defendants seek to enforce that statute against rights that he would otherwise be entitled to under the SCRA. *Id.* at 5.

1. Applicable Law

Plaintiff's second amended complaint references 50 U.S.C. § 3953[5] as one of his "grounds for relief." Record Document 26, p. 12. Section 3953(a) of the SCRA applies to obligations on real or personal property owned by a servicemember that "(1) originated before the servicemember's military service, for which he is still obligated; and (2) is secured by a mortgage, trust deed, or other security in the nature of a mortgage." 50 U.S.C. § 3953(a). Section 3953(c) states that a sale, foreclosure, or seizure of property for a breach of an obligation described in subsection (a) is not valid if it is made during, or within one year after, the period of military service. *Id.* at § 3953(c). Based on these provisions and Plaintiff's allegations, Mid State may have violated § 3953 when it foreclosed on the property in 2006. *See* Record Document 26, p. 12. However, because the Court finds that a private right of action under the SCRA is governed by the four-year statute of limitations found in 28 U.S.C. § 1658(a), Plaintiff's claim is time-barred.

---

[4] In his pleadings, Plaintiff most often refers to this event as a "seizure," while Defendants refer to it most often as a "foreclosure." *See* Record Documents 26, p. 6; 27-1, p. 8.
[5] Plaintiff also references §§ 3952, 4041, and 4042 as "grounds for relief." It is not clear how §§ 3952 and 4041 relate to Plaintiff's claims against Defendants, so the Court will not address them. Section 4042 is addressed later in this ruling.

In *McGreevey v. PHH Mortgage Corp.*, 897 F.3d 1037, 1039 (9th Cir. 2018), the Ninth Circuit considered a question of first impression: what statute of limitations should apply to private suits alleging foreclosure on the property of servicemembers in violation of 50 U.S.C. § 3953.[6] The court held that the four-year limitations period contained in the federal catchall statute of limitations at 28 U.S.C. § 1658(a) should apply to such actions. *Id.* at 1039–40. Section 1658 provides that, "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues." *Id.* at 1041–42 (quoting 28 U.S.C. § 1658(a)). In order to arise "under an Act of Congress enacted after" 1990, a plaintiff's claim against a defendant must have been made possible by an enactment made after 1990. *Id.* at 1042 (quoting *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 378 (2004)). This category includes amendments to statutes enacted before 1990 if that amendment creates new rights of action and corresponding liabilities that did not exist before 1990. *Id.* (quoting *Jones*, 541 U.S. at 381).

In *McGreevey*, the plaintiff sought to bring a claim for money damages, costs, and attorney's fees for a violation of § 3953 through § 4042 of the SCRA. *Id.* at 1040. Section 4042 was enacted in 2010 as an amendment to the SCRA and provides an express private right of action for violations of the SCRA. *Id.* at 1042. In order to determine whether the four-year statute of limitations applied to actions arising under § 3953, the Ninth Circuit had to determine whether § 4042 created a new right of action and corresponding liabilities that did not exist for servicemembers before 1990. *Id.*

The Ninth Circuit held that § 4042 did create new rights of action and corresponding liabilities and that it was therefore governed by § 1658's four-year statute of limitations. *Id.* at

---

[6] This section is also referred to as § 303(c) of the SCRA.

1044. The court found that before 2010, the SCRA did not contain an express private right of action for damages, costs, or attorney's fees.[7] *Id.* The plaintiff acknowledged that the SCRA, and its predecessor, the Sailors' and Soldiers' Civil Relief Act (SSCRA), did not contain an express private right of action before § 4042 was passed in 2010, but argued that there was an implied private right of action under the SSCRA before 1990. *Id.* at 1043. The court rejected this argument, noting that the plaintiff was unable to support this contention with any authority establishing a pre-2010 private right of action. *Id.* The court stated that a statute creates an implied private right of action only when Congress displays an "intent to create not just a private right but also a private remedy." *Id.* at 1043–44. (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). The court concluded that no implied private right of action for damages, attorney's fees, and costs existed in the SSCRA's pre-1990 foreclosure protections. *Id.* at 1044. The court held that the plaintiff's claim for damages depended on the "remedy-creating language" in the 2010 amendments. *Id.* Thus, § 1658's four-year statute of limitations applied to the plaintiff's claim. *Id.* Because the plaintiff brought his claim under the SCRA six years after the foreclosure, the Ninth Circuit affirmed the district court's dismissal of his suit. *Id.*

2. Application

The Court finds that the Ninth Circuit's reasoning in *McGreevey* applies to Plaintiff's claims against Defendants and that any claim he may have had under the SCRA is now time-barred. Plaintiff claims that Mid State seized his home without notice in February of 2006. Record Document 26, p. 12. He claims that he decided to initiate this suit in December of 2016 when he

---

[7] The court stated that before 2010, servicemembers could only obtain equitable relief or criminal sanctions for violations of the SCRA. *McGreevey*, 897 F.3d at 1045 n.11. Before § 4042 was enacted, the government could bring criminal charges against a violator, or a servicemember could have petitioned the court to stay a foreclosure proceeding or dispose of the case in another equitable manner. *Id.*

9

discovered that an individual named Wallete T. Willis was living on the property. *Id.* at 4. He did not file the instant lawsuit until December 1, 2017, more than eleven years after the alleged seizure took place and seven years after the statute of limitations had run. Record Document 1.

Plaintiff's claims are still time-barred even when the tolling provisions of the SCRA are applied to the action. The SCRA provides that the period of a servicemember's military service may not be included in computing the time limits for bringing any action or court proceeding by or against a servicemember. 50 U.S.C. § 3936. Plaintiff alleges that his active military service continued through November of 2006. Record Document 26, p. 12. If the statute of limitations began to run in November of 2006, as required by § 3936, Plaintiff's claim to relief under the SCRA expired in November 2010, still more than seven years before he filed the instant lawsuit.

The Court also declines to credit Plaintiff's assertion in his supplemental opposition that he did not sue Mid State during the four years following the foreclosure because he was told that the seizure never occurred. Record Document 36, p. 4. Plaintiff claims that Mid State "sought State court action in the 1st Judicial District Court of Louisiana" and seized his residence without proper notice in March of 2006.[8] *Id.* at 2. Plaintiff states that he was notified of this proceeding in July of 2006 when a court appointed attorney notified him by mail that the court had set a date to conduct a sale of his residence. *Id.* After Plaintiff informed the court-appointed attorney that he had been on active military duty from September 2005 through January 2006,[9] he claims that the attorney "notified the proper authorities" of his recent military service and the property was not sold. *Id.*

---

[8] In his various filings, Plaintiff sometimes states that this foreclosure took place in February of 2006 and other times he lists the month as March of 2006. *See* Record Documents 26, p. 12; 36, p. 2.
[9] Plaintiff's statement in his second amended complaint that he was engaged in active duty military service through November 2006 is inconsistent with his statement here that the military service only lasted through January of 2006. *See* Record Documents 26, p. 12; 36, p. 2.

10

Plaintiff maintains that the property was not "conveyed or transferred out of his ownership" and that he was not evicted from the property. *Id.*

Both Plaintiff and Defendants fail to provide the Court with any authority establishing what, if any, notice is necessary on the part of a plaintiff to trigger the statute of limitations for a private action under the SCRA. However, the Court finds that the facts Plaintiff sets forth in his pleadings establish that he had notice that his property was in danger of foreclosure such that the four-year statute of limitations began to run in November of 2006 at the latest. *See* Record Document 26, p. 12. If Plaintiff knew that a foreclosure sale of his property was scheduled in 2006 but did not go forward due to his military service, he should have been aware that a subsequent foreclosure sale was possible. Plaintiff asks the Court to accept the illogical proposition that, after his property narrowly avoided foreclosure, he was unaware of any issues with his ownership of the property until December of 2016 when he discovered that a third party was living there. The Court declines to do so. To the extent that any notice is necessary to trigger § 1658's statute of limitations, the Court finds that Plaintiff had notice of the foreclosure in 2006 and that the four-year statute of limitations bars his claim against Defendants under the SCRA. Those claims are hereby **DISMISSED WITH PREJUDICE**.

### B. Retroactivity of § 4042

Plaintiff's complaint cites 50 U.S.C. § 4042 as a basis for relief along with § 3953. Record Document 26, p. 12. This section of the SCRA states that, "Any person aggrieved by a violation of this chapter may in a civil action (1) obtain any appropriate equitable or declaratory relief with respect to the violation; and (2) recover all other appropriate relief, including monetary damages." 50 U.S.C. § 4042. It was added to the SCRA in 2010, four years before Plaintiff claims the foreclosure took place in his case. *Id.* In their second motion to dismiss, Defendants claim that §

4042 cannot be applied retroactively to allow Plaintiff to bring this suit based on a foreclosure that occurred before § 4042 existed. Record Document 27-1, p. 6. Because the Court dismisses Plaintiff's SCRA claims with prejudice based on the statute of limitations, the Court need not determine whether § 4042 could apply retroactively to grant Plaintiff a private right of action under § 3953 if his claims were not time-barred.[10]

### III. Plaintiff's claims not arising under the SCRA

#### A. Plaintiff's fraud claims

In its previous ruling, the Court found that Plaintiff's fraud claim failed to satisfy minimum pleading standards for fraud, which require a plaintiff to set forth the "who, what, when where, and how" of the alleged fraud. Record Document 23, p. 4; *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 328 (5th Cir. 2003). Plaintiff was given the opportunity to amend his complaint and allege sufficient facts showing how the foreclosure or transfer of his property was fraudulent, or how Defendants might have committed fraud in another way. Record Document 23, p. 4. In his second amended complaint, Plaintiff appears to have abandoned his fraud claim, stating that he "did not make a formal or legally cited claim of fraud against the Defendants." Record Document 26, p. 2. Defendants declined to address Plaintiff's fraud claim in their motion to dismiss in light

---

[10] In its previous ruling, this Court favorably referenced an opinion of the district court in *McGreevey,* which held that § 4042 could be applied retroactively to a violation of § 3953 because the defendant was at least on notice that it could be sued for wrongful foreclosure under the SCRA. Record Document 23, p. 10; *McGreevey v. PHH Mortg. Corp.*, No. 3:16-CV-05339-RJB, 2016 WL 4945301 at *4 (W.D. Wash. Sept. 16, 2016). Ten days after this Court's prior ruling in Plaintiff's case, the Ninth Circuit's ruling in *McGreevey* was published. While not directly contradictory, the Ninth Circuit's finding that § 4042 created new rights of action and corresponding liabilities (*McGreevey*, 897 F.3d at 1042) appears to severely undercut the district court's holding that § 4042 should apply retroactively because § 4042 does not attach new legal consequences to events preceding its enactment when applied to § 3953. *McGreevey*, 2016 WL 4945301 at *3.

of Plaintiff's statement that he did not make a fraud claim and the Court's previous finding that any fraud claim was insufficiently plead. Record Document 27-1, p. 5 n.1. The Court finds that because Plaintiff failed to amend his complaint to include additional information regarding his fraud allegations, his claims of fraud are hereby **DISMISSED WITH PREJUDICE**.

### B. Plaintiff's remaining claims

Any other claims Plaintiff seeks to assert against Defendants in this action are either insufficiently plead, overly vague and conlcusory, or fail to state a valid claim for relief. *See Iqbal*, 556 U.S. at 678–79. Plaintiff's main allegation is that Mid State executed a seizure of his property without notifying him and without any attorney present to represent his interests. *Id.* at 6–7. He claims, without explanation, that these actions violated § 9-611 of the Uniform Commercial Code and Louisiana Code of Civil Procedure Articles 2674 and 3742. *Id.* He also alleges that these actions violated the mortgage agreement that he entered into with Mid State, which stated that if the mortgagor defaulted, the property could only be sold after due process of law. *Id* Plaintiff claims that Defendants' actions in seizing his property did not comport with due process of law. *Id.* Plaintiff does not identify any statutes other than the SCRA that would enable him to recover against Defendants for these alleged wrongs. Furthermore, any delictual action that Plaintiff may have had a right to bring against Defendants for events that occurred in 2006 has prescribed. *See* La. Civ. Code art. 3492; La. Civ. Code art. 3499. Therefore, any remaining claims that Plaintiff may have sought to bring against Defendants in his action are hereby **DISMISSED WITH PREJUDICE**.

**CONCLUSION**

For the foregoing reasons, Defendants' Second Motion to Dismiss [Record Document 27] is hereby **GRANTED,** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**. A judgment consistent with this ruling will issue herewith.

**THUS DONE AND SIGNED** this 27 day of March, 2019, in Shreveport, Louisiana.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE